UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULLAH SHRIF AMIR,

               Plaintiff,                      Case No. 2:15-cv-12502
                                           District Judge Judith E. Levy
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 19) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 18)**

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.    REPORT**

      Plaintiff, Adullah Shrif Amir, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for disability insurance

benefits and supplemental security income. This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 18), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 19), Plaintiff's reply (DE 21), and the administrative record (DE 13).

**A.    Background**

Plaintiff protectively filed his applications for benefits on April 3, 2012, alleging that he has been disabled since February 22, 2012.  (R. at 53, 62, and 132-141.)  Plaintiff's applications were denied and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Michael R. Dunn held a hearing on November 7, 2013.  (R. at 30-51.)  He subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 15-25.)   On May 19, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Dunn's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

**B.    Plaintiff's Medical History**

The undersigned has thoroughly reviewed Plaintiff's extensive medical record.  In lieu of a lengthy summary of Plaintiff's medical history, I will make references and citations to the record as necessary in response to the parties' arguments.

**C.    Hearing Testimony**

**1.    Plaintiff's Testimony**

At the November 7, 2013 administrative hearing, Plaintiff's attorney gave a brief introduction, explaining that Plaintiff was born in Yemen and came to the United States as a teenager. (R. at 34.) Counsel noted that Plaintiff attended one year of high school in the United States, but did not graduate in either country. Counsel also emphasized that Plaintiff was 49 years old at the time of the hearing and would turn 50 in the spring. (R. at 34.)

Plaintiff, via an interpreter, testified that he lived with his wife and six children, aged 22, 18, 17, 12, 7, and 4. (R. at 35-37.) He indicated that he attended high school in the United States for one year. When asked if he could read and write in English, he responded "[n]ot much," but noted that he could read and write in Arabic. (R. at 37.) He noted that he could understand and speak in English "[a] little bit, not very much." (Id.) Plaintiff clarified that he had not had formal training in any job or occupation after high school. (R. at 41.)

Plaintiff testified that he had last worked in February 2012 at a restaurant called the New Parthenon, where he was a cook for about ten years. (R. at 37-38 and 42.) The job involved preparing food in bulk, including cooking meat, preparing the green beans, making soup, taking meat from the refrigerator to "chop it down," and placing everything on a steam table. (R. at 42.) He noted that the job involved lifting more than 20 pounds and standing frequently. (R. at 38.)

Plaintiff testified that he took pain medications, but that those medications were not very helpful and caused dizziness.  (R. at 39.)  He noted that he went to the hospital in 2013 because he could not lift his left arm and had pain in his neck.  (R. at 40.)  Plaintiff apparently thought it was a heart issue, but the doctors told him the problem was from a disc in his back.  (Id.)  He attended physical therapy for the pain, but indicated that it did not help much.

On an average day, Plaintiff took his children to school, watched television, and used his exercise machine.  (R. at 43.)  He noted that his wife did all of the chores and his children helped.  For example, he took his children grocery shopping twice a week, but they handle picking up the food, putting it in the cart, and then putting it in the trunk of the car.  (R.at 43.)

Plaintiff indicated that he could walk for one block before getting tired, could not lift a case of soda, and could lift a gallon of milk in his right hand, but not with his left.  (R. at 41.)  He noted that he could sit for thirty minutes before needing to get up and walk.  (Id.)

### 2.    Vocational Expert Testimony

Bernard Preston testified as the Vocational Expert ("VE") at the administrative hearing.  (R. at 44-50.)  The VE identified Plaintiff's past relevant work as food prep, at the medium exertional level and semi-skilled with a specific

4

vocational preparation ("SVP") of 3.[1] (R. at 45.) The ALJ then presented a series of hypotheticals to the VE. In the first of these, the ALJ asked the VE to determine if a hypothetical individual of Plaintiff's age, educational background, prior work experience, and any acquired skills in his food prep background could perform Plaintiff's past relevant work at the light exertional level with the following limitations:

> I want you, however, to assume that our worker is going to require a sit/stand option every 30 minutes provided that the exercise of the option does not itself cause the worker to be off task more than ten percent of the day. I want you to assume our worker can push and pull as much as I've indicated can be lifted and carried. Our worker should not be required to operate foot controls with either lower extremity. Our worker should not be required to do any overhead reaching with the left upper extremity, but can frequently reach in all other directions with the left upper extremity, and can frequently handle with the left upper extremity. I want you to assume that our worker can occasionally climb ramps and stairs, should never climb ladders or scaffolds, can frequently balance, occasionally stoop, crouch and kneel, but should not be required to crawl.

(R. at 45-46.) The VE testified that Plaintiff could not perform Plaintiff's past relevant work, but would be capable of performing other unskilled work in the national economy: inspector, with 325,401 positions nationally and 8,957 in the State of Michigan; garment sorter, with 227,477 positions nationally and 11,026 in

---

[1] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4P.

the State of Michigan; and laminating clerk, with 131,201 positions nationally and 5,863 in the State of Michigan.  (R. at 46-47.)

In his second hypothetical, the ALJ asked the VE to carry forward the prior limitations but reduce the exertional level from light to sedentary.  The VE testified that the hypothetical individual would be capable of performing the following work at the unskilled, sedentary level: hand packer, with 22,441 positions nationally and 611 in the State of Michigan; mail clerk, with 23,525 positions nationally and 592 in the State of Michigan; and system surveillance monitor, with 13,118 positions nationally and 414 in the State of Michigan.  (R. at 47-48.)

In the third hypothetical, the ALJ asked the VE to assume that the individual would be off-task for 20% of the workday due to pain, the need to change positions, and the side effects of medication.  The VE testified that being off task that frequently would preclude competitive employment.  (R. at 48.)  Likewise, the VE testified that missing more than three days of work per month would preclude competitive work.  (R. at 49.)

Finally, upon questioning from Plaintiff's counsel, the ALJ clarified that the mail clerk position requires an individual to read in English, but noted that the inspector, garment sorter, and laminating clerk would not require any reading.  (R. at 49-50.)

## D.  THE ADMINISTRATIVE DECISION

On February 6, 2014, the ALJ issued his decision.  (R. at 15-25.)  At Step 1
of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged
in substantially gainful activity since February 22, 2012.  (R. at 17.)

At Step 2, the ALJ found that Plaintiff had the following severe
impairments: degenerative disc disease of the cervical spine, lumbago, bilateral pes
planus, and arthritis.  (R. at 17.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the  review, *see Colvin v.
Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet
       or equal the criteria of an impairment set forth in the Commissioner's
       Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the
       claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and
       residual functional capacity, can the claimant perform other work
       available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 17-18.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the capacity to perform light work:

> [E]xcept the claimant must be afforded the option to alternate between sitting and standing once each thirty minutes, with the proviso that he would not be "off task" for more than ten percent of the workday while doing so; the claimant may never push and/or pull, including the operation of foot controls, with the bilateral lower extremities; the claimant may never reach overhead, but may frequently handle and may frequently reach in all other directions with the left upper extremity; the claimant may frequently balance, occasionally stoop, kneel, c[r]ouch, climb ramps and stairs, but may never crawl, climb ladders, ropes or scaffolds.

(R. at 18.)

The ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work.  (R. at 23.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 23.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

## E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

As a preliminary matter, Plaintiff's motion fails to comply with Eastern District of Michigan Local Rules 5.1 and 7.1(d)(3). (DE 18.) Specifically, although Rule 5.1 requires that the "type size of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-proportional) or 14 point font (proportional), the type size in the instant brief appears to be much smaller. Further, although the rules limit the length of briefs to 25 pages absent leave of Court, Plaintiff's brief is 30 pages long. E.D. Mich. LR 7.1(d)(3). Plaintiff's

counsel is cautioned that further non-conforming briefs will be stricken from the record.

Plaintiff asserts three statements of error. First, he contends that the ALJ failed to properly apply the Medical Vocational Guidelines ("the grids"), and therefore his Step 5 finding was not supported by substantial evidence. Second, he argues that the ALJ's credibility finding was impermissible. Finally, he posits that the ALJ erred by rejecting the opinion evidence of Plaintiff's treating physician. Dick Gieske. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions. I will address each argument in turn.

### 1.   The ALJ's Step 5 Finding is Supported by Substantial Evidence

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work at Step 4, the burden shifts to the Commissioner at Step 5 to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

The Commissioner can accomplish this by employing the grids, found at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). However, "if the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination." *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). Furthermore, the grids take into account only exertional limitations, which are defined as when the limitations "imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [the claimant's] ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). Where a claimant suffers from a nonexertional "impairment that significantly diminishes his [or her] capacity to work, but does not manifest itself as a limitation on strength . . . rote application of the grid is inappropriate." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). Assistance of a VE is "advisable . . . where an individual's exertional RFC does not coincide with the full range of sedentary work." Soc. Sec. Rul. 83-12, 1983 WL 31253, at *3.

Such reliance on the testimony of a VE in response to a hypothetical question may provide substantial evidence at Step 5 that the claimant has the vocational qualifications to perform substantial gainful activity that exists in the national economy "only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Howard v. Comm'r of Soc. Sec.*, 276

12

F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).   "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform."  *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

Here, Plaintiff asserts that the ALJ applied the grids, specifically rule 202.18, when making his determination that Plaintiff could perform light work. Grid rule 202.18 directs a finding of not disabled for younger individual (under the age of 50), with a skilled or semi-skilled work history with no transferable skills, with limited or less education, who can perform light work.  404.1598, App. 2, Table No. 1, 202.18.  Plaintiff contests the ALJ's reliance on this provision, noting that the ALJ failed to consider his difficulty communicating in English, as well as the fact that he turned 50 soon after the hearing.  Defendant counters that the ALJ was entitled to rely on the testimony of the VE in this case, as opposed to the grids, because Plaintiff's RFC did not directly align with any grid rule.  Defendant points to Plaintiff's need to alternate between sitting and standing as the reason that his RFC placed him between the light and sedentary exertional categories, making the grids inapplicable.

In his opinion, the ALJ pointed out that Plaintiff could not perform all or substantially all of the requirements for a full range of light work.  As such, he "asked the vocational expert whether jobs exist" for such an individual.  (R. at 24.)

He notes at Step 5 that "[b]ased on the testimony of the vocational expert," a finding of not disabled was appropriate.  (Id.)  Plaintiff has not demonstrated that it was inappropriate, in this case, for the ALJ to rely on the testimony of the VE rather than relying solely on the grids.

Plaintiff is correct that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  § 200.00(a) of Appendix 2, Subpart P, Regulations No. 4.  However, as Defendant points out, Plaintiff's RFC did *not* align with any grid rule in this case.  Specifically, Plaintiff's RFC called for light work with a sit/stand option, which places him firmly *between* the light and sedentary exertional categories.  *See* S.S.R. 83-12, 1983 WL 31253, at *4 ("In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. . . .  In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.")

Nor do Plaintiff's arguments about the component factors of the grids lead to a finding of error.  First, Plaintiff asserts that, because Plaintiff went from "a younger individual" at age 49 to "closely approaching advanced age" when he

turned 50 several months after the hearing, the ALJ should have applied grid rule 202.09, which would have directed a finding of disability.  This would likely be true if Plaintiff's vocational factors and RFC coincided with all of the criteria of a given rule.  However, it overlooks the fact that the ALJ properly relied on the testimony of a VE in this matter, and did not rely solely on the grids.  Second, Plaintiff argues that the ALJ should have treated Plaintiff as an unskilled worker because of his difficulty communicating in English, which would render a finding of disabled under rule 202.09.  However, the ALJ relied on the testimony of the VE in this case, who, upon questioning from Plaintiff's counsel, indicated that Plaintiff's rudimentary verbal English skills and essentially non-existent reading skills would *not* preclude competitive employment in the inspector, sorter, and laminating clerk positions at the light level.  (R. at 50.)  Accordingly, Plaintiff's English language limitations were accounted for and Plaintiff has not demonstrated that the ALJ's reliance on the VE's testimony was not supported by substantial evidence.

### 2.   The ALJ did not Err in Weighing Plaintiff's Credibility

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)

("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly."). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d 469 at 475.

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). The ALJ made this finding here, concluding that

Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. at 19.)

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p.  A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight."  *Malcolm v. Comm'r of Soc. Sec.*, No.

17

13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, Plaintiff argues that the ALJ committed reversible error in his credibility analysis for five reasons. First, he asserts that the ALJ failed to factor in the existence of "significant findings" that are consistent with Plaintiff's allegations of subjective complaints. (DE 18 at 21.) Second, he contends that that the ALJ's conclusions with respect to the impact of physical therapy were incorrect, because Plaintiff reported increased pain following his therapy. Third, he argues that the ALJ incorrectly claimed that he was non-compliant with his medication. Fourth, he contends that the ALJ overstated his level of activities of daily living. Finally, Plaintiff asserts that the ALJ relied too heavily on the purported symptom magnification assessed by Plaintiff's physical therapist. I will address each assertion in turn.

### a.    Findings Supportive of Subjective Complaints

In his opinion, the ALJ concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. (R. at 19.) The ALJ went on to describe objective medical evidence that would be consistent with Plaintiff's complaints of pain (R. at 19 and 20), but then described medical evidence in the record that cuts

18

against Plaintiff's subjective complaints.  For example, while he notes that an April 23, 2006 MRI revealing spondylosis would be consistent with Plaintiff's reports of cervical pain, muscle spasms, weakness, and inflammation, other evidence in the record, including an MRI and x-ray demonstrating only "minimal" spondylosis (R. at 212 and 440), along with minimal or normal findings upon physical examination (R. at 380 ("moves all extremities without difficulty" and "range of motion intact"), 565-66 (finding a normal range of motion and strength), and 640-41 (finding normal range of motion in the cervical spine)).  Similarly, Plaintiff points to a diagnosis of lumbago, which the ALJ acknowledges would be consistent with Plaintiff's allegations of lower back pain and weakness in his legs.  However, the ALJ further notes that other diagnostic images reveal minimal degenerative changes and normal findings.  (R. at 309 and 439.)  He also points out physical examinations in the record revealing normal range of motion, steady gait, and the ability to move all extremities.  (R. at 380 and 640.)

As such, the ALJ has acknowledged and weighed evidence in the record that is consistent with Plaintiff's complaints of pain, and has pointed to substantial evidence in the record that contradicts those complaints.  The Court cannot re-weigh this evidence in favor of Plaintiff simply because there is evidence in the record supporting an opposite conclusion.  *See VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir. 2002) ("If supported by substantial evidence, the

Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result.") (citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983)); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (concluding that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").

### b.     Physical Therapy

The ALJ notes that Plaintiff attempted to complete physical therapy for his impairments, "which left him with pain levels at one out of ten, normal range of motion and no diminution in his activities of daily living." (R. at 19.) The ALJ relies on a June 7, 2013 report from Plaintiff's physical therapist, which states exactly that. (R. at 545-46.) Plaintiff does not contest the accuracy of the report from his physical therapist, but instead points to his own self-reported statement to Dr. Suleiman on June 17, 2013, in which he indicates that physical therapy "did not help him." (R. at 502.) The ALJ actually acknowledges Plaintiff's June 17, 2013 report to Dr. Suleiman, noting that the inconsistency between the physical therapist's report, which showed that physical therapy had improved Plaintiff's conditions, and Plaintiff's later contradictory statement. The ALJ did not err by using such an inconsistency as a factor weight *against* Plaintiff's credibility. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 336 (6th Cir. 2007) (concluding that substantial evidence supported the ALJ's credibility determination where it

was based on "inconsistencies between [the plaintiff's] testimony, medical history, and information he and his wife submitted to the SSA."); *Adams v. Comm'r of Soc. Sec.*, No. 1:10-cv-503, 2011 WL 2650688, at *1 (W.D. Mich. July 6, 2011) ("In assessing a social security claimant's credibility, the ALJ is not prohibited from applying ordinary techniques of credibility evaluation, which would include consideration of a lack of candor in other areas . . . .").

### c.   Medication Inconsistency

Plaintiff takes issue with the ALJ's conclusion that although Plaintiff "follows a range of painkilling medications . . .  the record indicates that the claimant uses these medications on an intermittent basis."  (R. at 21.)  As support, the ALJ points to a January 18, 2013 treatment note from Dr. Suleiman, which states that Plaintiff was "not taking any pain medication."  (R. at 500.)  Plaintiff does not demonstrate how the ALJ's conclusion was untrue: he acknowledged that Plaintiff was on a regimen of painkillers, but noted that the record indicated that he sometimes did not take painkillers.  Further, it was not in error for the ALJ to consider Plaintiff's somewhat conservative treatment as one of the bases on which to discount his credibility.  *See Carter v. Comm'r of Soc. Sec.*, No. 12-14529, 2014 WL 3400710, at *5 (E.D. Mich. July 10, 2014) (finding that the plaintiff's "conservative treatment of his pain with prescription medication and one spinal

steroid injection" was inconsistent with his allegations of disabling pain) (citing *Myatt*, 251 F. App'x at 334-35).

### d.    Activities of Daily Living

The ALJ noted that Plaintiff's reported activities of daily living, including his ability to attend to his hygiene and grooming, engage in child rearing activity, serve as a primary caregiver for another member of the household, engage in routine household chores, manage his own finances, medication, and appointments, to exercise, landscape, read, watch television, and visit his local community center regularly, were not "limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (R. at 21.) Plaintiff argues that the ALJ's citation to his activities of daily living represented a "gross selective citation of the record."  (DE 18 at 22.)  In support of his contention that the ALJ erred in his consideration of Plaintiff's activities of daily living, Plaintiff points to his other self-reported information in the record that is more consistent with his complaints of disabling pain, including a later report that: he was unable to prepare his own food or do housekeeping; his child rearing activities consisted of taking his children to school and to family gatherings; his cleaning was limited to once a week; and he could no longer perform landscaping.

The ALJ's consideration of Plaintiff's activities of daily living was not *per se* in error. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001)

(concluding that the ALJ properly determined that the claimant's "subjective complaints were not credible in light of her ability to perform other tasks" including walking around her yard, riding a bicycle, going to church, going on vacation, cooking, vacuuming, and making beds). Additionally, as noted above, Plaintiff's activities of daily living are not the ALJ's only rationale for discounting Plaintiff's allegations of work-preclusive limitations. *See Boley v. Comm'r of Soc. Sec.*, No.. 11-cv-15707, 2012 WL 7748910, at *13 (E.D. Mich. Nov. 28, 2012) *report and recommendation adopted*, No. 11-CV-15707, 2013 WL 1090531 (E.D. Mich. Mar. 15, 2013) (concluding that, while "minimal activities of daily living do not, by themselves, show that a claimant can perform the demands of full-time work," such a consideration *in combination with other relevant factors* was proper to discount Plaintiff's credibility.). Here, the ALJ provided an extensive credibility analysis, in addition to his consideration of Plaintiff's activities of daily living. For example, he cited to diagnostic imaging that revealed minimal changes of his lumbar spine (R. at 20 and 309), normal results on x-rays of the lumbar spine (R. at 20, 214, and 222), and consistent minimal or normal findings on physical examinations. (R. at 20, 379-383, 566, and 640-41.) He also pointed to Plaintiff's self-reports that his pain rated as zero out of ten. (R. at 20 and 433.) The ALJ appropriately weighed the evidence regarding Plaintiff's activities of daily living,

and the Court may not re-weigh that evidence simply because other evidence in the record could produce a different result.  *Mullen*, 800 F.2d at 545

### e.    Symptom Magnification

Finally, Plaintiff asserts that the ALJ put too much emphasis on the one-time report of his physical therapist indicating that Plaintiff exhibited a positive Waddell's Sign for overreaction.  (R. at 566.) [3]  Plaintiff is correct that the ALJ may not use a positive Wadell's Sign, *on its own*, as strong evidence that he was malingering or exaggerating his symptoms.  *Walters v. Comm'r of Soc. Sec.*, No. 11-15171, 2013 WL 1364719, at *12 (E.D. Mich. Mar. 12, 2013), *report and recommendation adopted*, No. 11-cv-15171, 2013 WL 1364712 (E.D. Mich. Mar. 29, 2013).  However, the evidence was properly in the record and therefore it was

---

[3] As the Sixth Circuit has explained:

> Waddell's signs' are the most well known of several tests developed to detect non-organic causes of low back pain. A positive Waddell's sign may indicate that the patient's pain has a psychological component rather than organic causes. While it is a common perception in the litigation arena that these signs are proof of malingering and fraud, they merely describe a constellation of signs used to identify pain in those who need more detailed psychological assessments. The literature . . . reveals that there is no association between positive Waddell signs and the identification of secondary pain and malingering. Patients with strong psychological components to their pain often display these signs as well.

*Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 (6th Cir. 2013).

not in error for the ALJ *to consider* such evidence.  *See Haynes v. Astrue*, 2012 WL 174716, at *8 (S.D. Ohio Jan. 20, 2012).  Moreover, the ALJ did not base his assertion that Plaintiff has exaggerated his symptoms merely on the one instance of positive Waddell's Sign. He also pointed to Plaintiff's report that his pain was at a level of seven out of ten on the same day that he appeared pleasant and in no apparent distress.  (R. at 21.)

Even assuming, *arguendo*, that the ALJ committed error by relying on an instance of positive Waddell's Sign in the record as a reason to conclude that Plaintiff was exaggerating his symptoms, such error would be harmless as is demonstrated by the rest of his extensive credibility analysis, which properly took into account objective medical evidence, activities of daily living, and Plaintiff's inconsistent statements.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("We now make explicit what we have previously adopted by implication: harmless error analysis applies to credibility determinations in the social security disability context.").  Accordingly, I find no reversible error in the ALJ's consideration of Plaintiff's credibility.

### 3.    The ALJ Did Not Err in Weighing Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about

25

the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r*

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion,"  20 C.F.R. § 416.927(c)(2), and   "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight,"  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§

---

1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
2. What an individual's RFC is;
3. Whether an individual's RFC prevents him or her from doing past relevant work;
4. How the vocational factors of age, education, and work experience apply; and
5. Whether an individual is "disabled" under the Act.

*Id.*

404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec*., 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations

28

where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

In the instant action, Plaintiff argues that the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1527(c) in evaluating the opinion of her treating physician, Dr. Suleiman.  For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the opinion of Dr. Suleiman and that the Commissioner has met the goal of § 1527(c).  *Francis*, 414 F.App'x at 805 (quoting *Wilson,* 378 F.3d at 547).  I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

The ALJ assigned "little weight" to Dr. Suleiman's March 19, 2012 and September 24, 2012 opinions.  (R. at 22.) Plaintiff only challenges the ALJ's analysis of the March 19, 2012 findings.  (DE 18 at 25-27.)  The March 19, 2012

opinion was completed at the request of the State of Michigan's Department of Human Services and indicated that Plaintiff was unable to stand, could never lift ten pounds, and could not work at any job for at least twelve months.  (R. at 415-418.)  The ALJ discounted the weight of this opinion for two reasons: 1) it was issued to a different governmental agency in furtherance of a different program; and 2) it was not consistent with objective studies, physical examinations, and activities of daily living.  (R. at 22-23.)

### a.      Consideration of the Source of the Assessment

Plaintiff first argues, without citation to any case law, that the fact the assessment was completed for another governmental program is not sufficient reason to discount it.  Independent research by the Undersigned does not reveal any law or opinions supporting Plaintiff's contention.  However, the regulations do make clear that the ALJ must consider opinions of individuals who "are also experts in Social Security disability evaluation," so it stands to reason that knowledge of the evaluation process for this particular governmental program is a valid consideration for an ALJ when weighing opinion evidence.  20 C.F.R. § 404.1527(e)(2)(i).  Moreover, the ALJ did not hinge the weight of Dr. Suleiman's opinion on this criteria, but merely "noted" the fact that the March 19, 2012 opinion "was issued to a different governmental agency," before further pointing out that it "was not consistent with objective studies . . . ."  (R. at 22.)

30

### b.      Consideration of Issues Reserved to the Commissioner

Furthermore, Dr. Suleiman's opinion that Plaintiff was incapable of work was not entitled to special deference. Opinions that are merely "administrative findings that are dispositive of the case" are reserved to the Commissioner and therefore are not entitled to special significance, even when opined by a treating source.  20 C.F.R. § 404.1527(d).  Examples of such administrative findings are opinions that the claimant is disabled or unable to work.

However, the ALJ must still weigh and consider such opinions.  20 C.F.R. § 404.1527(c)(2); s*ee also Devault v. Comm'r of Soc. Sec.*, No. 14-11986, 2015 WL 556750, at *3 (E.D. Mich. Sept. 21, 2015) *amended on reconsideration for other reasons*, No. 14-11986, 2015 WL 7450399 (E.D. Mich. Nov. 24, 2015) ("The Social Security Administration must provide the weight it gives a treating source's opinion when making a disability determination." (citing *Wilson*, 378 F.3d at 544)).  Here, the ALJ clearly considered the opinion, but concluded that it was inconsistent with the objective evidence in the record.  In doing so, he further contrasted the opinion with Dr. Suleiman's own treatment notes, which report that Plaintiff had "good range of motion," "no motor or sensory deficits," and "normal gait."  (R. at 23.)  These are sufficient reasons for rejecting the opinion of a treating physician.  *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (concluding that the ALJ properly rejected a treating physician opinion that was

31

not supported by objective medical evidence); *Buxton v. Halter*, 246 F.3d 762, 773

(6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor,

particularly where they are unsupported by detailed objective criteria and

documentation." (internal quotation omitted)); *White v. Comm'r of Soc. Sec.,* 572

F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts

with other evidence in the record is sufficient to discount the opinion.).  Plaintiff's

assertion that evidence exists in the record to support Dr. Suleiman's findings is

insufficient to overturn the ALJ's weighing of the evidence.  *Mullen*, 800 F.2d at

545.

### c.     Consideration of the 20 C.F.R. § 404.1527 Factors

Plaintiff also asserts that the ALJ failed to consider the factors outlined in 20

C.F.R. § 404.1527(d) when discounting Dr. Suleiman's opinion.  However, as

addressed above, the regulations do not require "an exhaustive factor-by-factor

analysis." *Francis*, 414 F. App'x at 804-05 (citing § 404.1527(d)(2)).  Here, the

ALJ explicitly considered the supportability of the opinion and the consistency of

the opinion with the record as a whole, noting that the opinion was *not* consistent

with objective studies, physical examinations, and activities of daily living.  (R. at

22-23.)  He was not required to include a factor-by-factor analysis in his opinion,

and this Court need only consider whether the opinion permits it and the claimant

to have "a clear understanding of the reasons for the weight given" to the opinion.

*Francis*, 414 F. App'x at 805.  Here, I conclude that the ALJ has accomplished this task.

## G.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 28, 2016          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing order was sent to parties of record on June 28, 2016, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti

34