UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Abdullah Shrif Amir,

                Plaintiff,        Case No. 15-cv-12502

v.                                Judith E. Levy
                                United States District Judge

Carolyn W. Colvin,

                              Mag. Judge Anthony P. Patti
               Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S OBJECTIONS
TO THE REPORT AND RECOMMENDATION [23], ADOPTING
THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [22], DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [18], AND GRANTING THE
COMMISSION'S MOTION FOR SUMMARY JUDGMENT [19]**

On June 28, 2016, the Magistrate Judge filed a Report and
Recommendation, recommending that the Court deny plaintiff Abdullah
Shrif Amir's motion for summary judgment (Dkt. 18) and grant the
Commissioner of Social Security's motion for summary judgment (Dkt.
19). (Dkt. 22.) Plaintiff timely filed objections (Dkt. 23), and the
Commissioner filed a response. (Dkt. 25.) For the reasons set forth
below, plaintiff's objections are denied, and the Magistrate Judge's

Report and Recommendation to deny plaintiff's motion for summary judgment and grant the Commission's motion for summary judgment is adopted in full.

## I.   Background

The Court has reviewed the background in light of the record and finds that the Magistrate Judge's description of this case is accurate.  In addition, plaintiff has not specifically objected to the background as described in the Report and Recommendation.  It is thus adopted in full. (Dkt. 22 at 2-8.)   Any disputes as to the facts are addressed in the analysis.

## II.   Standard

An applicant for disability benefits who is not satisfied with the Commissioner's final decision may obtain review in federal district court.    42 U.S.C. § 405(g).   The district court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).   The court may affirm,

2

modify, or reverse the Commissioner's decision, and may also choose to remand the case for rehearing when appropriate. 42 U.S.C. § 405(g).

The Commissioner's findings of fact are given substantial deference on review and are conclusive if supported by substantial evidence. *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). If there is substantial evidence to support the Commissioner's decision, the district court must affirm it even if substantial evidence also supports a contrary conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (if the decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion").

When deciding whether there is substantial evidence to support the Commissioner's factual findings, the district court is limited to an

3

examination of the record and should consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  However, neither the Commissioner nor the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

When a Magistrate Judge has submitted a Report and Recommendation and a party has filed timely objections, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects.  28 U.S.C. § 636(b)(1)(C).

## III.   Analysis

### a. Objection 1

Plaintiff argues that the Magistrate Judge erred by relying on a vocational expert's testimony because plaintiff's limitations place him between two grid rules that both direct a finding of disabled.  (Dkt. 23 at 2-3.)  According to plaintiff, reliance on the vocational expert is only appropriate when a plaintiff's limitations place him between grid rules that direct opposite findings of disabled and not disabled.  (*Id.* at 2.)

4

Specifically, plaintiff argues that he was between grid rules because the findings placed him between sedentary and light work, but even the applicable light-work grid would direct a finding of disabled. (*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2, § 202.09).)  Rule 202.09, cited by plaintiff, applies if plaintiff has the following limitations:  ability to perform light work, illiteracy or inability to communicate in English, previous unskilled work, and an age range approaching advanced age (fifty to fifty-four).  20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2, § 202.09.

Plaintiff's argument assumes that plaintiff should have been considered approaching advanced age.  But at the time of the ALJ's decision, plaintiff was forty-nine.  (*See* Dkt. 13-2 at 35 ("[H]e's 49 now, he'll be 50 next spring."); *see also id.* at 24-25, 30 (plaintiff born May 14, 1964, hearing decision February 6, 2014).)  The Magistrate Judge rejected plaintiff's argument that he should have been considered within the fifty to fifty-four age category.  (Dkt. 22 at 14-15.)  As set forth below in the analysis of objection 2, the Magistrate Judge's decision was not clearly erroneous.  Thus, plaintiff's first objection is denied.

5

### b. Objection 2

Necessary to support plaintiff's first objection, plaintiff argues that the Magistrate Judge erred by accepting the ALJ's "mechanical approach to [plaintiff]'s age category." (Dkt. 23 at 3-7.) According to plaintiff, "the ALJ was required to consider [plaintiff]'s borderline age before determining whether the Grids needed to be applied." (*Id.* at 4.)

Plaintiff cites 20 C.F.R. § 404.1563(b), which directs that:

> If [claimants] are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [claimant's] case.

Plaintiff argues that this requires a remand "with instructions to address the borderline age issue in the decision." (Dkt.23 at 7.)

First, as directed in the regulation, the ALJ need consider the borderline age issue only when "using the older age category would result in a determination or decision that" plaintiff is disabled. 20 C.F.R. § 404.1563(b). But even if plaintiff were considered "approaching advanced age," as required by Rule 202.09, he does not otherwise fulfill

6

all of the other requirements.  Thus, the ALJ did not err by considering plaintiff as a younger individual (less than fifty years old).

Rule 202.09 requires a claimant to be closely approaching advanced age, to be illiterate or unable to communicate in English, to have unskilled or no previous work experience, and to have a maximum sustained work capacity limited to light work.  20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2, § 202.09.  The ALJ found that although limited, plaintiff had at least some ability to read, write, understand, and speak English.  Moreover, the ALJ noted that plaintiff's previously relevant work experience in food preparation was semi-skilled.  Thus, even if plaintiff had been considered approaching advanced age, he would not have fully fit within Rule 202.09.

Plaintiff makes the conclusory allegation that "the ALJ erroneously leaped to an assumption that [plaintiff] is 'at least literate and able to communicate in English.'"  (Dkt. 23 at 4 (Comm'r Br. at 17).)  But at the hearing, the ALJ asked plaintiff if he could "read and write in English," to which plaintiff replied "[n]ot much."  (Dkt. 13-2 at 38.)  The ALJ also asked plaintiff if he could "understand and speak English," to which plaintiff replied "[a] little bit, not very much."  (*Id.*)

7

Thereafter, the ALJ indicated "[w]e're going to go with the interpreter anyway, but I just needed to get that information." (*Id.*)  The preceding exchange occurred without the aid of the interpreter.  The ALJ's finding that plaintiff "has a limited education and is able to communicate in English" (Dkt. 13-2 at 24) is based on plaintiff's testimony, and this finding is more than the illiteracy or inability to communicate in English required by Rule 202.09.

Moreover, the vocational expert testified and the ALJ noted that plaintiff's previous work experience was semi-skilled.  (*Id.* at 24 ("The claimant has past relevant work as a food preparer . . . , having a medium exertional level designation and a specific vocational preparation factor of three."); *id.* at 46 ("[VE:]  I believe he was food prep . . . . SVP skill level 3, semi-skilled.  [ALJ:]  So it's semi-skilled? [VE:]  Yes, sir.").)  Plaintiff does not dispute this.  His previous semi-skilled relevant work experience is more than the unskilled to no past relevant work experience required by Rule 202.09.

The Magistrate Judge correctly noted that plaintiff going from "'a younger individual' at age 49 to 'closely approaching advanced age' when he turned 50 several months after the hearing" would require

8

application of Rule 202.09 "if [his] vocational factors and RFC coincided with all of the criteria of a given rule." (Dkt. 22 at 15); *see Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 401 (6th Cir. 2008); *Gilliam v. Colvin*, No. 2:14-cv-12335, 2015 U.S. Dist. LEXIS 72987, at *70 (E.D. Mich. Apr. 17, 2015) (ALJ did not mechanically apply age category when plaintiff did not present additional vocational adversities). Because plaintiff's vocational factors did not coincide with the remaining criteria of Rule 202.09, substantial evidence supports the ALJ's categorization of plaintiff in the "younger individual" category, that is, less than fifty years old.

Relatedly, the Sixth Circuit directs that 20 C.F.R. § 404.1563(b) "does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case." *Bowie*, 539 F.3d at 399.

> Although ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination.

9

*Id.* When a "claimant's additional vocational adversities would be significant . . . [,] some discussion of proper age categorization" is merited "in order to meet the substantial-evidence threshold." *Id.* at 401 (citing HALLEX § II-5-3 to note that "substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry").

Here, the ALJ acknowledged plaintiff's birthdate, noted that plaintiff was forty-seven years old "on the alleged disability onset date," and cited the applicable age category. (Dkt. 13-2 at 24.) To be sure, plaintiff was months away from "reaching an older age category." *See Bowie*, 539 F.3d at 401 (6th Cir. 2008) (quoting *Van Der Maas v. Comm'r of Soc. Sec.,* 198 F. App'x 521, 528 (6th Cir. 2006)). But here, for the reasons noted above, the ALJ did "not move h[im] to the higher category, presumably because the ALJ did not find that [plaintiff] had demonstrated the 'additional vocational adversities' required to do so." *Id.* (quoting *Van Der Maas,* 198 F. App'x at 528).

10

Plaintiff would not have fully aligned with Rule 202.09 even if the ALJ had explicitly considered his borderline age, because plaintiff had previous semi-skilled work experience and some, albeit limited, ability to read, write, understand, and speak English. Thus, plaintiff's second objection is denied.

### c. Objection 3

Plaintiff argues that the Magistrate Judge erred by finding that "the ALJ relied on the testimony of the VE," because "where the Grids apply, VE testimony is irrelevant." (Dkt. 23 at 7-8.) According to plaintiff, "so long as proper evaluation by the ALJ addressed to remedying his errors may lead to applying a Grid rule directing disability, there is no occasion to consider VE testimony." (*Id.* at 8.)

But as set forth above, the ALJ did not err when he found that plaintiff did not fall squarely within any grid rule. In a footnote, plaintiff argues that although the Magistrate Judge "does not propose reliance on the government's argument regarding [plaintiff]'s [] difficulties communicating in English . . . . , this argument was misguided." (*Id.* at n.6.) As set forth above, the ALJ's opinion was

11

based on plaintiff's responses to his questions during the hearing, and was thus supported by substantial evidence.

Moreover, even if plaintiff were illiterate and unable to speak or understand any English, plaintiff fails to argue why the ALJ erred in finding that plaintiff's past relevant work as a food preparer has a specific vocation preparation factor of three, that is, semi-skilled. (Dkt. 13-2 at 24.) The grid rule plaintiff argues is appropriate, Rule 202.09, requires unskilled or no past relevant work experience. Because plaintiff did not otherwise fit in any grid rule, the ALJ properly elicited vocational expert testimony. Thus, plaintiff's third objection is denied.

### d. Objection 4

Plaintiff argues that the Magistrate Judge erred by finding that the ALJ properly evaluated plaintiff's subjective complaints and credibility. (Dkt. 23 at 8-15.) Specifically, plaintiff takes issue with the findings as they related to his physical therapy, medication compliance, daily activities, and purported symptom magnification. (*Id.*)

As to physical therapy, the Magistrate Judge found that the ALJ did not err by using the inconsistency between the physical therapist's report (that physical therapy had improved plaintiff's condition) and

plaintiff's later contradictory testimony (that physical therapy "did not help him") as a factor weighing against plaintiff's credibility.  (Dkt. 22 at 20.)  Plaintiff argues that the "ALJ's finding is [] not supported by the record, and the R&R's repeated failures to confront the actual arguments raised cannot be adopted."   (Dkt. 23 at 10.)   Plaintiff highlights that "the self-report from [June 17, 2013] is just one of *many* pieces of evidence identified by [plaintiff], most of which were not self-reports."  (*Id.* at 9-10.)

As to medication compliance, the Magistrate Judge found that the ALJ did not err by concluding that although plaintiff "follows a range of painkilling medications . . . the record indicates that [he] uses these medications on an intermittent basis."  (Dkt. 22 at 21.)  Plaintiff argues that "the *only* note which indicated that [plaintiff] was not taking his medication was the January 18, 2013 progress note from Dr. Suleiman," plaintiff's treating physician.  (Dkt. 23 at 10.)  According to plaintiff, the "R&R wholly fails to explain how a single notation in the entire record . . . adequately supports an ALJ's sweeping claim that the claimant merely uses his medications 'on an intermittent basis.'"  (*Id.*)

As to daily activities, the Magistrate Judge found that the ALJ's consideration of plaintiff's activities of daily living were not *per se* in error. (Dkt. 22 at 23-24.) The ALJ found that plaintiff engaged in hygiene and grooming, engaged in child rearing activity, was the primary caregiver for another member of the household, engaged in routine household chores, managed his own finances, medication, and appointments, exercised, landscaped, read, watched television, and visited his local community center regularly. (Dkt. 13-2 at 22.) Plaintiff argues that the ALJ's findings were based on a "grossly selective citation of the record," given that they were mostly based on an older version of multiple submitted Social Work Questionnaires. (Dkt. 23 at 11.) A later version of the same questionnaire "noted that [plaintiff] was unable to prepare his own food or do housekeeping." (*Id.*) And one completed by plaintiff's brother supported, rather than contradicted, plaintiff's subjective complaints of pain. (*Id.* at 11-12.)

As to purported symptom magnification, the Magistrate Judge found that although the ALJ could not use a positive Waddell's Sign[1] of

---

[1] The Sixth Circuit has explained that Waddell's Signs:

14

overreaction on its own as strong evidence that plaintiff was malingering or exaggerating his symptoms, it was not in error for the ALJ to consider such evidence.  (Dkt. 22 at 24-25.)   In addition, the Magistrate Judge noted that even assuming the ALJ committed error by relying on an instance of positive Waddell's Sign in the record, such error would be harmless given the rest of the ALJ's extensive credibility analysis.   (*Id.* at 25.)   Plaintiff argues that it was in error, and moreover, the error was not harmless because "it should not be assumed that a determination is unaffected by reliance on an erroneous basis merely because it is not the only one offered."  (Dkt. 23 at 14-15.)

---

are the most well known of several tests developed to detect non-organic causes of low back pain.  A positive Waddell's sign may indicate that the patient's pain has a psychological component rather than organic causes.  While it is a common perception in the litigation arena that these signs are proof of malingering and fraud, they merely describe a constellation of signs used to identify pain in those who need more detailed psychological assessments.  The literature . . . reveals that there is no association between positive Waddell signs and the identification of secondary pain and malingering.  Patients with strong psychological components to their pain often display these signs as well.

*Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 (6th Cir. 2013).

"An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "If supported by substantial evidence, the Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result." *VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir. 2002). The fact that there may be record evidence that supports plaintiff does not negate the multiple inconsistencies noted by the ALJ.

Looking at any specific instance noted above may look like "cherry picking," as plaintiff argues, but when looking at the inconsistencies in their totality, substantial evidence supports the ALJ's finding as to credibility. Moreover, plaintiff is incorrect that these were all only isolated incidents in the record. As to physical therapy, plaintiff's testimony did not only conflict with the June 17, 2013 report. As the ALJ noted, it also conflicted with notes from a July 2, 2013 examination that plaintiff "reported pain at a level of 'seven' on a one-to-ten scale, yet on examination was pleasant and appeared in no apparent distress." (Dkt. 13-2 at 22.) And as to the positive Waddell's Sign, plaintiff fails to consider that the Magistrate Judge correctly noted there was not only

16

one instance of a positive Waddell's Sign.   (Dkt. 22 at 25.)   The Magistrate Judge did not err by finding that the ALJ's decision was supported by substantial evidence.   (*Id.* (citing *Haynes v. Astrue*, No. 1:11-cv-185, 2012 U.S. Dist. LEXIS 6755, at \*23 (S.D. Ohio Jan. 20, 2012)).)

On the whole, the inconsistencies between the objective medical evidence and plaintiff's testimony as to his pain are numerous.   When viewed not in isolation, but together, there was a physical therapy note that was inconsistent with plaintiff's testimony and another doctor's observation of plaintiff's demeanor, a notation that plaintiff was not on medication at a time he was complaining of severe pain, a daily activities questionnaire (among conflicting questionnaires) that suggested plaintiff was able to do a number of activities inconsistent with his complaints of pain, and more than one positive Waddell's Sign suggesting that his complaints of pain were exaggerated.

The ALJ permissibly applied "ordinary techniques of credibility evaluation" when assessing plaintiff's credibility.   *Adams v. Comm'r of Soc. Sec.*, No. 1:10-CV-503, 2011 U.S. Dist. LEXIS 72356, at \*3 (W.D. Mich. July 6, 2011).   "[C]onservative treatment of his pain with

prescription medication" is "inconsistent with [plaintiff's] allegations of severe pain." *See Carter v. Comm'r of Soc. Sec.*, No. 12-14529, 2014 U.S. Dist. LEXIS 93511, at *12 (E.D. Mich. July 10, 2014) (citing *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007)). And the responses to questionnaires regarding plaintiff's daily activities, albeit inconsistent, support the ALJ's finding that plaintiff's "subjective complaints were not credible in light of her ability to perform other tasks." *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

Substantial evidence supported the ALJ's credibility determination. Thus, plaintiff's fourth objection is denied.

### e. Objection 5

Plaintiff argues that the Magistrate Judge erred by finding that the ALJ properly weighed the opinion evidence. (Dkt. 23 at 15.) The ALJ discounted the opinion of Dr. Suleiman, plaintiff's treating physician, for two reasons: "1) it was issued to a different governmental agency in furtherance of a different program; and 2) it was not consistent with objective studies, physical examinations, and activities of daily living." (Dkt. 22 at 30.) According to plaintiff, these are

18

insufficient reasons to reject Dr. Suleiman's opinion. (Dkt. 23 at 17-18.) Plaintiff raised the same arguments in his motion for summary judgment. (*See* Dkt. 18 at 27-29.)

Under the regulations, treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(c)(2). Thus, under the "treating physician rule," the ALJ must "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the [*sic*] with other substantial evidence in the case record." *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *5 (July 2, 1996)).

When, as here, the ALJ does not give controlling weight to a treating physician's opinion, the "ALJ must apply certain factors[,]

namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," to determine how much weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). But this does not apply to opinions on issues reserved to the Commissioner, which "are never entitled to controlling weight or special significance." Soc. Sec. Rul. 96-5p, 1996 SSR LEXIS 2, at *1 (July 2, 1996).

Finally, even if the ALJ fails to discuss the requisite factors, the finding is harmless error if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or "the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).

The Magistrate Judge noted that plaintiff provided no cases, and the Magistrate Judge's independent research did not reveal any law or opinions, supporting plaintiff's assertion that "the fact the assessment was completed for another governmental program is not sufficient reason to discount it." (Dkt. 22 at 30.)  In his objection, plaintiff still fails to provide any such case law, instead arguing that "logic plainly reveals that this is wholly irrelevant to the weight given a physician's opinion about a claimant's functional abilities."  (Dkt. 23 at 16.)

In fact, the regulations and case law suggest that this is a proper consideration when deciding how much weight to give a treating physician's opinion.  "[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion."  20 C.F.R. § 404.1527(c)(6).  Thus, it is relevant whether a treating physician prepared an opinion for a different program, especially when that opinion "contains no indication that [the physician] bears even a passing familiarity with the disability process." *Edmond v. Colvin*, No. EDCV 13-1108-AS, 2014 U.S. Dist. LEXIS 167763, at *17 (C.D. Cal.

21

Dec. 3, 2014) (finding that ALJ properly discounted weight of treating physician opinion regarding claimant's limitations prepared for worker's compensation claim).

Notably, the ALJ did consider Dr. Suleiman's opinion. Giving the opinion "little weight" is not the same as giving it *no* weight. *Cf. Trentini v. Colvin*, No. 14-CV-5238 (DLI), 2016 U.S. Dist. LEXIS 137379, at *38 (E.D.N.Y. Sep. 30, 2016) ("[W]hile an opinion of disability rendered for a different agency cannot bind the Commissioner, an ALJ, nevertheless, is compelled to consider the physician's statements . . . ."); *Davies v. Astrue*, No. 08-CV-01115 (GLS), 2010 U.S. Dist. LEXIS 70401, at *15 (N.D.N.Y. June 17, 2010), *adopted by* 2010 U.S. Dist. LEXIS 70418 (N.D.N.Y. July 14, 2010) ("Thus, it is clear from the ALJ's decision, that she did not ignore the evidence submitted by [the treating physician], despite the fact that any opinions regarding [p]laintiff's ability to work were created in a Workers' Compensation context.") (citing Soc. Sec. Rul. 06-03p, 2006 SSR LEXIS 5, at *17 (Jan. 1, 2006)).

In any case, that Dr. Suleiman prepared the opinion for another purpose was not the only reason the ALJ discounted the opinion. The

ALJ also found that the opinion was contradicted by the objective medical evidence.  On this ground, plaintiff argues that Dr. Suleiman's opinion was supported by imaging testing obtained at his request, and was "not inconsistent with the opinion of examining physician Amjad Shidyak, M.D., who found that [plaintiff]'s impairments cause 'mild limitations on physical activity.'" (Dkt. 23 at 16-17.)

Dr. Suleiman opined that plaintiff was "unable to work, could not lift or carry ten pounds, [and] could not stand or walk for two hours," and that plaintiff was "significantly limited."  (Dkt. 13-2 at 23.)  Dr. Suleiman's opinion is not entitled to special deference because his conclusions relate to issues reserved to the Commissioner.  20 C.F.R. § 404.1527(d).  Moreover, the ALJ highlighted that Dr. Suleiman's treatment notes showed that plaintiff had "tenderness to palpation but good range of motion," that he was "neurovascularly intact, with no motor or sensory deficits," had "no erythema or edema," and had "normal gait." (Dkt. 13-2 at 24.)  Even though other evidence might have supported a contrary conclusion, the ALJ gave "good reasons" why the opinion should be assigned little weight.  *See Nelson*, 195 F. App'x at 470.  Thus, plaintiff's fifth objection is denied.

23

## IV.   Conclusion

For the reasons set forth above, plaintiff's objection (Dkt. 23) is DENIED, the Magistrate Judge's Report and Recommendation (Dkt. 22) is ADOPTED, plaintiff's motion for summary judgment (Dkt. 18) is DENIED, and the Commissioner's motion for summary judgment (Dkt. 19) is GRANTED.

IT IS SO ORDERED.

Dated: December 6, 2016          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2016.

                                 s/Felicia M. Moses
                                 FELICIA M. MOSES
                                 Case Manager